UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------ x
TOISA LIMITED,

            Plaintiff,

    v.

PT. TRANSAMUDRA USAHA SEJAHTERA,

            Defendant.

------------------------------------------------------------ x

Case No. 13 Civ. 1407 (JMF)

# BANK MANDIRI'S MEMORANDUM OF LAW IN SUPPORT OF ITS ORDER TO SHOW CAUSE WHY RULE B MARITIME ATTACHMENT SHOULD NOT BE VACATED AND FOR EMERGENCY VACATUR OF THE COURT'S ORDER DATED AUGUST 7, 2013

Carolyn B. Lamm
Claire A. DeLelle
**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for PT Bank Mandiri
(Persero) Tbk*

August 20, 2013

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS .......................................................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.   TOISA BEARS THE BURDEN OF PROVING THAT THE ATTACHMENT WAS PROPER ............................................................................................................ 4

    II.  TOISA HAS ATTACHED SOVEREIGN PROPERTY IN VIOLATION OF THE FOREIGN SOVEREIGN IMMUNITIES ACT ................................................. 5

        A.  Bank Mandiri's Property Is Immune From Attachment ............................... 5

        B.  Toisa Cannot Refute The Legal Presumption That Bank Mandiri Owns The Attached Funds ......................................................................................... 7

            1.  Toisa's Conclusory Allegations Are Wholly Insufficient To Overcome Bank Mandiri's Sovereign Immunity ................................................ 8

            2.  Title To The Funds In Bank Mandiri's Correspondent Bank Accounts Never Passes To Its Customers ......................................................... 11

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                 **PAGE(S)**

*Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*,
460 F.3d 434 (2d Cir. 2006) ............................................................................................. 5

*Arriba Ltd. v. Petroleos Mexicanos*,
962 F.2d 528, 537 (5th Cir. 1992) .................................................................................. 11

*Brenntag Int'l Chems., Inc. v. Bank Of India GZ*,
175 F.3d 245 (2d Cir. 1999) ............................................................................................. 6

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) ........................................................................................ 8, 11

*First Merch. Bank OSH, Ltd. v. Village Roadshow Pictures*,
01 Civ. 8370, 2002 WL 1423063 (S.D.N.Y. 2002) ...................................................... 12

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002) ............................................................................................... 8

*In re Perry H. Koplik & Sons, Inc. v. Bank Mandiri*,
357 B.R. 231 (S.D.N.Y. 2006) ......................................................................................... 6

*Millicom Int'l Cellular, S.A. v. Rep. of Costa Rica*,
No. Civ. A. 96-315, 1997 WL 527340 (D.D.C. Aug. 18, 1997) .................................. 11

*NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*,
652 F.3d 172 (2d Cir. 2011) ............................................................................................. 8

*Peninsula Petroleum Ltd. v. New Econ Line PTE Ltd.*,
09 Civ. 1375, 2009 WL 702840 (S.D.N.Y. 2009) .......................................................... 8

*S & S Machinery Co. v. Masinexportimport*,
706 F.2d 411 (2d Cir. 1983) ..................................................................................... 5, 6, 7

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
585 F.3d 58 (2d Cir. 2009) ............................................................................... 5, 7, 9, 10

*Stephens v. Nat'l Distillers & Chem. Corp.*,
69 F.3d 1226 (2d Cir. 1995) ..................................................................................... 5, 6, 7

**STATE CASES**

*Cargill Financial Services International v. Bank Finance and Credit Limited,*
896 N.Y.S.2d 317 (App. Div. 1st Dep't 2010) .................................................................. 9

*Kolodziejczyk v. Wing,*
261 A.D.2d 927 (App. Div. 4th Dep't 1999) ..................................................................... 8

*Perkins v. Guaranty Trust Co. of N.Y.,*
8 N.E.2d 849, 853 (N.Y. 1937) .......................................................................................... 8

*Pollock v. Rapid Indus. Plastics Co.,*
497 N.Y.S.2d 45, 49 (App. Div. 2d Dep't 1985) ............................................................... 8

*Sidwell & Co. v. Kamchatimpex,*
166 Misc. 2d 639 (N.Y. Sup. Ct. 1995) ...................................................................... 11, 12

*Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria),*
650 N.Y.S.2d 726 (App. Div. 1996) .................................................................................. 9

**STATUTES AND RULES**

Fed. R. Civ. P. Supp. R. E(4)(f) ..................................................................................... 1, 4

Fed. R. Civ. P. Supp. R. E(8) ............................................................................................ 2

28 U.S.C. §§ 1602-1611 .................................................................................................... 1

28 U.S.C. § 1603(b) ........................................................................................................... 1

28 U.S.C. § 1605(b) ........................................................................................................... 1

28 U.S.C. § 1609 ................................................................................................................ 1

28 U.S.C. § 1610(d) ........................................................................................................... 1

**MISCELLANEOUS**

Government Regulation No. 75 of 1998 dated October 1, 1998 ....................................... 3

Pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rules"), PT Bank Mandiri (Persero) Tbk ("Bank Mandiri") submits this memorandum of law in support of its Order to Show Cause Why Plaintiff's Admiralty Writ of Attachment Should Not Be Vacated and for an Emergency Vacatur of the Court's Order dated August 7, 2013 ("Order to Show Cause"). By appearing to raise its sovereign immunity and object to this Court's jurisdiction, Bank Mandiri does not waive and indeed invokes sovereign immunity.

## PRELIMINARY STATEMENT

Bank Mandiri is a majority-owned agency or instrumentality of the Republic of Indonesia ("Indonesia") and, as such, is entitled to attachment immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"). Specifically, under 28 U.S.C. § 1609 "... the property in the United States of a foreign state shall be immune from attachment except as provided in sections 1610 and 1611 of this chapter." The exception defined in 28 U.S.C. § 1610(d) extends *only* to property of the foreign state in the U.S. sued for a commercial activity *if* the state has explicitly waived its immunity *and* the purpose of the attachment is to secure satisfaction of a judgment that may ultimately be entered against the foreign state. Here neither condition applies: Bank Mandiri has not waived its immunity *and* the judgment ultimately will not be against Bank Mandiri or the Government of Indonesia *but* against Defendant Transamudra Usaha Sejahtera ("PT Transamudra"). Hence Bank Mandiri's accounts are immune from attachment before judgment, and the Order to Show Cause must be vacated.

Plaintiff Toisa Limited ("Toisa") has attached Bank Mandiri's property held in Bank Mandiri's U.S. correspondent bank account at The Bank of New York Mellon ("BNY

1

Mellon"). The attachment violates Bank Mandiri's sovereign immunity. The wrongfully attached funds belong to Bank Mandiri and not PT Transamudra, and Toisa has alleged nothing to show otherwise. Toisa has no claim or judgment against Bank Mandiri nor has Bank Mandiri explicitly waived its immunity from any form of attachment. Accordingly, there is no basis in fact or law for Toisa's Writ of Attachment, and it should be vacated immediately.

Bank Mandiri further requests the Court vacate its August 7, 2013 Order ("Deposit Order"). BNY Mellon expressly consents to the emergency vacatur requested. The Order requires BNY Mellon to transfer $2,604,413.30 of Bank Mandiri's property to the court registry by August 21, 2013. Such deposit and further alienation of Bank Mandiri's property is improper and contrary to Bank Mandiri's sovereign immunity privileges and protections afforded under U.S. law. Transferring to the registry prejudices Bank Mandiri because it vitiates its attachment immunity. Before any such deposit, Toisa must establish that the funds do not belong to Bank Mandiri or that one of the exceptions to attachment immunity under the FSIA applies. Toisa can do neither.

Finally, Bank Mandiri makes this restricted appearance pursuant to Admiralty Rule E(8) and expressly preserves its sovereign immunity defenses for all purposes, including discovery, and any objections to personal jurisdiction and subject matter jurisdiction.

## FACTS

Bank Mandiri is a state-owned bank headquartered in Jakarta, Indonesia and formed under, and governed by, the laws of Indonesia. Declaration of Nixon LP Napitupulu ¶ 4, dated August 20, 2013 ("Napitupulu Decl."). Since its establishment, Bank Mandiri has been majority owned by Indonesia, and at present Indonesia directly owns 60% of Bank Mandiri's

shares. *Id.* ¶ 5 (Exs. E, F). Bank Mandiri is a separate legal entity from Indonesia, having been established on October 2, 1998 based on notarial deed No. 10 of Sutjipto, S.H., under Government Regulation No. 75 of 1998 dated October 1, 1998. *Id.* ¶ 4 (Ex. A).

Toisa filed a Verified Complaint on March 1, 2013 seeking a Writ of Attachment pursuant to Admiralty Rule B against Bank Mandiri's six U.S. correspondent banks, ostensibly on the basis that PT Transamudra may have property in this District held by Bank Mandiri's U.S. correspondent banks. Compl. ¶¶ 2, 17, ECF No. 1. Toisa alleges in its Complaint that it has commenced an arbitration against Transamudra relating to a dispute over payment for a chartered vessel. Toisa asserts no claims against Bank Mandiri, and its attachment does not concern the enforcement of a maritime lien against a vessel or cargo of a foreign state under Section 1605(b). Nowhere in Toisa's *ex parte* request to the Court to issue a Writ of Attachment did Toisa explain that Bank Mandiri is an agency or instrumentality of Indonesia. Nor does Toisa apprise the Court of Bank Mandiri's sovereign status in its August 19, 2013 letter to the Court, despite being informed of such sovereign status by Bank Mandiri's counsel earlier that day.

On March 1, 2013, the Court issued an *ex parte* Order to Issue Writ of Maritime Attachment and Garnishment ("Attachment Order"), ECF No. 2. The Attachment Order permitted Toisa to serve a Writ of Attachment upon six banks: (i) Citibank, N.A., (ii) Wells Fargo Bank N.A., (iii) Royal Bank of Scotland, (iv) BNY Mellon, (v) JPMorgan Chase Bank, N.A., and (vi) Standard Chartered Bank, to attach property in Bank Mandiri's accounts "until such time as garnishee is able to determine what funds or credits in its customer [Bank Mandiri's] U.S. Dollar correspondent account at the garnishee banks belong to or [are] held for the benefit of Defendant PT Transamudra Usaha Sejahtera." Attachment Order at 3. Bank

3

Mandiri maintains U.S. dollar correspondent bank accounts at all aforementioned institutions except Royal Bank of Scotland, since that account was closed in January 2013. Napitupulu Decl. ¶ 11. Bank Mandiri uses its accounts to process transactions for its own account and those of its customer. Napitupulu Decl. ¶¶ 8, 11.

The Attachment Order provided opportunity for any person claiming an interest in any property attached to apply to the Court for a prompt hearing at which Toisa shall be required to show why the attachment should not be vacated. Attachment Order at 2.

BNY Mellon was served with the Writ of Attachment on or about July 2, 2013. On July 23, 2013, BNY Mellon filed its Answer of Garnishee the Bank of New York Mellon to the Writ of Attachment and Garnishment ("Answer") acknowledging that it had restrained $2,604,413.30 of Bank Mandiri's funds located in Bank Mandiri's account with BNY Mellon ("Attached Funds"). Answer ¶ 3. BNY Mellon's Answer further stated its understanding and belief that the Attached Funds belong solely to Bank Mandiri and requested that the Court quash the Attachment Order and "prohibit Plaintiff from further attempts to attach accounts or other property not held in the name of [Transamudra]." *Id.* ¶ 4.

On August 7, 2013, the Court ordered BNY Mellon to deposit the Attached Funds in the court registry by August 21, 2013. The Deposit Order expressly entitles Bank Mandiri to a prompt hearing at which Toisa shall be required to show why the attachment should not be vacated.

## ARGUMENT

### I. TOISA BEARS THE BURDEN OF PROVING THAT THE ATTACHMENT WAS PROPER

Rule E(4)(f) of the Supplemental Admiralty Rules "clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements

4

of Rules B and E." *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Toisa has not and cannot discharge its burden because Bank Mandiri's property is immune from attachment before judgment.

## II. TOISA HAS ATTACHED SOVEREIGN PROPERTY IN VIOLATION OF THE FOREIGN SOVEREIGN IMMUNITIES ACT

### A.   Bank Mandiri's Property Is Immune From Attachment

It is well-settled law that "foreign states," as defined in Section 1603(a) of the FSIA, enjoy presumptive immunity from pre- and post-judgment attachment under Section 1609 of the FSIA. *See Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1230 (2d Cir. 1995) (stating that "the principle behind the prohibition against attachments should apply broadly"); *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983), *cert. denied*, 464 U.S. 850 (1983) ("Foreign states accordingly are immune from prejudgment attachment of their assets in the United States, unless the immunity is explicitly waived as provided in § 1610(d) . . . .").

The term "foreign state" includes an "agency or instrumentality," as defined under Section 1603(b). An agency or instrumentality of a foreign state is any entity:

> **(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country.**

28 U.S.C. § 1603(b).

As established by the Napitupulu Declaration and its exhibits, Bank Mandiri undisputedly satisfies each of the three requirements of Section 1603(b). Bank Mandiri was formed as a separate legal person under Indonesian law; is majority-owned by Indonesia,

5

which holds 60 percent of the outstanding shares; and is neither a citizen of a State of the United States nor created under the laws of any third country. Napitupulu Decl. ¶¶ 4-5. *See also In re Perry H. Koplik & Sons, Inc.*, 357 B.R. 231, 248 n.49 (Bankr. S.D.N.Y. 2006) (finding Bank Mandiri to be an agency or instrumentality under 28 U.S.C. § 1603(b)).

Accordingly, 28 U.S.C. § 1609 immunizes Bank Mandiri's property from attachment—including the Rule B pre-judgment attachment against its U.S. correspondent bank accounts—unless Bank Mandiri has explicitly waived such pre-judgment immunity, which it has not.[1] *See S & S Mach. Co.*, 706 F.2d at 416-18 (vacating pre-judgment attachment upon property of Romanian bank and trading company that were agencies or instrumentalities of foreign state). The FSIA's prohibition on pre-judgment attachment is intended precisely to deny the jurisdiction of U.S. courts over the property of foreign sovereigns and prevent the exact situation Bank Mandiri now faces. *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 253 (2d Cir. 1999) ("The reason for this limitation is to prevent the location of the property from conferring jurisdiction on the court-i.e., to prevent *in rem* and *quasi-in-rem* actions from undermining the general principles codified in the FSIA.").

Moreover, the Second Circuit has recognized that even requiring the deposit of foreign sovereign property into the hands of the United States courts violates the FSIA's prohibition on pre-judgment attachments. *See Stephens*, 69 F.3d at 1229 (affirming grant of motion seeking relief under the FSIA from posting pre-answer security required under N.Y. state

---

[1] Section 1609 provides:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609.

law). In *Stephens*, the court found that a N.Y. pre-judgment security requirement was impermissible under the FSIA where it "would force foreign sovereign retrocessionaires to place some of their assets in the hands of the United States courts for an indefinite period" during which time, the foreign state "would have no access to those assets." *Id.*

The case is no different here. Although the property has already been wrongfully attached, there is no basis for extending the immunity violation by alienating Bank Mandiri's property through BNY Mellon's August 21 deposit obligation. In affirming denial of the request that sovereign funds be deposited with the court, the Second Circuit in *Stephens* made abundantly clear that the FSIA forbids any "'attachment[,] arrest or execution' of a foreign sovereign's property subject only to the exceptions set forth in §§ 1610-1611" and that courts "are not at liberty to create other exceptions, not in the statute." *Stephens*, 69 F.3d at 1230. Finally, the *Stephens* court cautioned that the holding in *S & S Machinery* ought not to be readily ignored, namely that "the principle behind the prohibition against attachments should apply broadly." *Id.* As reinforced in *Stephens*, courts should not tolerate procedures that flout the FSIA ban on attachment of assets—pre- or post-judgment. Thus, not only should the writ of attachment be vacated, but BNY Mellon's obligation under the Deposit Order should be vacated as well.

**B.     Toisa Cannot Refute The Legal Presumption That Bank Mandiri Owns The Attached Funds**

Ownership of the Attached Funds is determined under New York law. *Jaldhi Overseas Pte Ltd.*, 585 F.3d at 70 (applying New York law to determine ownership for purposes of Rule B attachment). As a matter of New York law, Bank Mandiri is presumed to own the funds in its own account where it is the named account holder and only Bank Mandiri has the authority to make withdrawals or otherwise instruct BNY Mellon in respect of its

7

funds. *See* Napitupulu Decl. ¶ 9; *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 86 (2d Cir. 2002) ("When a party holds funds in a bank account, possession is established, and the presumption of ownership follows.");[2] *EM Ltd. v. Rep. of Argentina*, 473 F.3d 463, 473-76 (2d Cir. 2007) (finding funds in Central Bank account immune where plaintiffs failed to show evidence of defendant's control over account).

### 1. Toisa's Conclusory Allegations Are Wholly Insufficient To Overcome Bank Mandiri's Sovereign Immunity

Toisa cannotسidestep the protections afforded Bank Mandiri's property by alleging conclusorily that property in Bank Mandiri's U.S. correspondent account belongs to someone else by virtue of a beneficial interest. *See Peninsula Petroleum Ltd. v. New Econ Line PTE Ltd.*, 09 Civ. 1375, 2009 WL 702840, at *2 (S.D.N.Y. Mar. 17, 2009) (denying a writ of attachment because plaintiff's conclusory allegations regarding garnishees' possession of defendant's funds via an electronic funds transfer were not sufficient to demonstrate a "plausible entitlement to a maritime attachment").

Toisa's improper attachment of Bank Mandiri's property hinges on only the most vague and broad-brush of allegations: "The assets in the form of credits, or otherwise in those correspondent bank accounts are <u>in most instances</u> the property of the foreign banks' customers." Compl. ¶ 16 (emphasis added). Critically, Toisa has not alleged that <u>in this</u>

---

[2] *See also Pollock v. Rapid Indus. Plastics Co.*, 497 N.Y.S.2d 45, 49 (App. Div. 2d Dep't 1985) (stating "possession of tangible property . . . creates a rebuttable presumption of ownership"); *Kolodziejczyk v. Wing*, 261 A.D.2d 927, 928 (N.Y. App. Div. 4th Dep't 1999) (joint possessors have rebuttable presumption of ownership in joint bank account); *Perkins v. Guaranty Trust Co. of N.Y.*, 8 N.E.2d 849, 853 (N.Y. 1937) (rebuttable presumption of ownership in possession of stock certificates)."

8

instance, the Attached Funds are property of any Bank Mandiri customer, let alone that the Attached Funds are the property of Transamudra in particular.

This failure is significant because Rule B attachment is dependent on the movant's proof that the defendant owns the property. *See Jaldhi Overseas Pte Ltd.*, 585 F.3d at 69 ("As a remedy *quasi in rem*, the validity of a Rule B attachment depends entirely on the determination that the *res* at issue is the property of the defendant at the moment the *res* is attached."). And the Second Circuit has unequivocally held that the defendant has no property ownership interest—beneficial or otherwise—in funds held by an intermediary bank that have been sent by or are destined for the defendant as the beneficiary. *Id.* at 72. But beneficial ownership is precisely all that Toisa argues. In its August 19 letter to the Court (at 2), Toisa relies on *Cargill Financial Services International v. Bank Finance and Credit Limited*, 896 N.Y.S.2d 317 (App. Div. 1st Dep't 2010), to support its beneficial ownership argument. *Cargill*, however, says nothing about the title of customers to property at the intermediary bank level of a funds transaction. Instead, *Cargill* supports Bank Mandiri's position by affirming an order *vacating* an attachment that interfered with the correspondent banking system by restraining international transactions. *Id.* at 318; *see also Sigmoil Res., N.V. v. Pan Ocean Oil Corp. (Nigeria)*, 650 N.Y.S.2d 726, 727 ("Great care must be taken to avoid impeding the role of correspondent accounts in the facilitation of international transactions. Domestic and foreign banks should not become embroiled in controversies surrounding underlying transactions of which they have no knowledge or connection." (quotations omitted))

In addition to advancing a flawed legal argument, Toisa makes no effort to allege facts to support the attachment with respect to any of the six correspondent banks. Its sole basis for

9

the Attachment Order appears to be an almost illegible copy of what may be a SWIFT instruction bearing an RBS logo. Compl. Ex. 1. Regardless, as evidenced in the Napitupulu Declaration, Bank Mandiri's correspondent account at RBS was closed in January 2013 before the issuance of the Attachment Order on March 1, 2013. This almost illegible document is wholly insufficient to justify service of the Attachment Order on six correspondent accounts held in the name of a foreign sovereign entity.

In sum, Toisa has cast a wide net perhaps hoping to attach transfers sent by or to Transamudra. Toisa, however, is prohibited from attaching electronic funds transfers ("EFTs") at BNY Mellon or any other correspondent bank for that matter. BNY Mellon, acting as Bank Mandiri's correspondent bank, is an intermediary bank under Article 4-A of the Uniform Commercial Code. *See generally, Jaldhi Overseas Pte Ltd.*, 585 F.3d at 60 n.1 (describing the use of an intermediary bank—a bank's bank—to conduct EFTs). EFTs passing through Bank Mandiri's correspondent account cannot be attached under Rule B because it is neither the property of the originator nor the beneficiary. *Id.* at 71 ("New York law establish[es] that EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank."). Accordingly, there is no basis for the continued restraint of Bank Mandiri's property.

Finally, Toisa attempts to obfuscate the hopelessly vague nature of its allegations underpinning the Attachment Order by urging that the Court afford Toisa discovery. *See* Letter from James H. Power to Hon. Jesse M. Furman, dated August 19, 2013, at 2-3. Toisa has it backwards. To overcome the high threshold to obtain discovery against a foreign sovereign, Toisa must first allege specific facts crucial to an immunity determination. Toisa has failed to do so, and discovery against a foreign sovereign may not be ordered on the basis

10

of speculative or conclusory allegations. *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 537 n.17 (5th Cir. 1992); *Millicom Int'l Cellular, S.A. v. Rep. of Costa Rica*, No. Civ. A. 96-315, 1997 WL 527340, at *1 (D.D.C. Aug. 18, 1997). Regardless, the Second Circuit has held that discovery against a foreign sovereign should be ordered only "circumspectly" because sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation. *EM Ltd*, 473 F.3d at 486 (affirming district court's vacatur of attachment and denial of discovery where plaintiffs' allegations did not provide a "reasonable basis" for jurisdiction over the assets). Toisa's discovery request should be rejected.

### 2. Title To The Funds In Bank Mandiri's Correspondent Bank Accounts Never Passes To Its Customers

Despite Toisa's vague and conclusory allegations to the contrary, Bank Mandiri's customers never own funds in Bank Mandiri's U.S. correspondent bank accounts. Specifically, foreign banks, like Bank Mandiri, use correspondent accounts to transact in U.S. dollars with counterparties. The working of a correspondent account was described by the court in *Sidwell & Co., Ltd. v. Kamchatimpex*, a case where, like here, the plaintiff sought to attach funds in the defendant's bank's (KAR) correspondent account at Citibank:

> Essentially a foreign financial institution, such as KAR, that is unable to operate a branch or subsidiary office in the United States maintains a dollar account at a Citibank, to effect US dollar transactions for itself and its customers. The account is maintained in the name of the foreign financial institution. *The funds in the account belong to the foreign financial institution and no client of such institution is authorized to withdraw funds from the account.*
>
> When transfers are made into a correspondent account, Citibank advises the foreign financial institution of the transfer. The foreign financial institution then presumably makes a disbursement of funds at one of its branches upon demand by its customer. *No funds are wired or transferred from the*

11

> *correspondent account to the customers' account at the foreign institution.*

632 N.Y.S.2d 455, 457 (Sup. Ct. 1995) (emphasis added).

The *Sidwell* court denied attachment of the funds in the correspondent account of the defendant's bank, and the court's reasoning is applicable in this case to deny restraint and turnover of the restrained cash at BNY Mellon. The factors that led to the court's ruling were: (1) that upon notification of receipt of deposits into the correspondent account at Citibank, "KAR credits the client's accounts in Russia;" (2) that such credits are not made by actual transfer of money from the correspondent account, but by book entry and "no withdrawal or debit was made to the correspondent account;" (3) the "fact that KAR clients directed payments to be made into the account in connection with export transactions does not signify any control over the account;" and (4) "KAR in operating the correspondent account was not merely acting as an agent for collection." *Id.* at 458-59; *accord First Merch. Bank OSH, Ltd. v. Village Roadshow Pictures*, No. 01 Civ. 8370, 2002 WL 1423063, at *1 n.4 (S.D.N.Y. June 28, 2002) ("Since funds are immediately credited to the beneficiary's account at the local branch of the foreign financial institution, these [correspondent] accounts cannot be attached to restrain funds transferred there for the benefit of the party to be attached." (quotations omitted)).

The factors considered by the *Sidwell* court are present in this case: (1) Upon notification of a credit to its correspondent account, Bank Mandiri credits it customer's account abroad. Napitupulu Decl. ¶ 8. (2) Such credits are made by book entry such that Bank Mandiri retains a corresponding credit in its correspondent account. *Id.* (3) Bank Mandiri's customers exercise no control over the correspondent account and are not authorized to withdraw funds. *Id.* (4) Bank Mandiri is not an agent for collection because it

does not retain funds for its customers' benefit but instead credits its customers' accounts abroad the same day. *Id.*

## CONCLUSION

For the foregoing reasons, Bank Mandiri respectfully requests that the Court (i) vacate the August 7, 2013 Order, (ii) order that Plaintiff Show Cause why the Attachment Order as to all six U.S. correspondent banks restraining Bank Mandiri's sovereign property should not be vacated, and (iii) Order against Plaintiff awarding Bank Mandiri its reasonable costs and expenses associated with these proceedings, including attorneys' fees.

Dated:  August 20, 2013

Respectfully submitted,

WHITE & CASE LLP

By: _____
Carolyn B. Lamm
Claire A. DeLelle
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

*Counsel for Bank Mandiri*

13